# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

CHARLES EUGENE HARRIS,

        Plaintiff,

v.                                CIVIL ACTION NO.  2:11-cv-00497

NORFOLK SOUTHERN RAILWAY CORP.,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the court are three motions for summary judgment: (1) Plaintiff Charles Eugene Harris's Motion for Partial Summary Judgment [Docket 250]; (2) Defendant/Third-Party Plaintiff Norfolk Southern Railway Company's Motion for Summary Judgment on Track Inspection and Maintenance Claims [Docket 269]; and (3) Defendant/Third Party Plaintiff Norfolk Southern Railway Company's Motion for Summary Judgment Relative to Claims of Improper Train Handling [Docket 272].

Also pending before the court are two additional motions: Plaintiff Charles Eugene Harris's Motion Regarding Defendant Norfolk Southern Railway Corp.'s Spoliation of Relevant Evidence [Docket 340] and Norfolk Southern Railway Company's Motion to Bifurcate the Liability Phase from the Punitive Damages Phase of the Trial [Docket 356].[1]

Responses and replies to each of these motions have either been filed, or the deadline has passed for such filings. A hearing on the summary judgment motions was held on November 19,

---

[1]      The defendant was named as Norfolk Southern Railway Corporation in the Complaint and has continued to be referred to as such by the plaintiff, but has referred to itself as Norfolk Southern Railway Company throughout the litigation.

2012. These motions are all ripe for review. For the reasons discussed below, the plaintiff's motion for partial summary judgment [Docket 250] is **GRANTED in part** and **DENIED in part**, the defendant's motion for summary judgment on track inspection and maintenance claims [Docket 269] is **GRANTED in part** and **DENIED in part**, and the defendant's motion for summary judgment on improper train handling claims [Docket 272] is **GRANTED**. In addition, the plaintiff's motion regarding spoliation of relevant evidence [Docket 340] and the defendant's motion to bifurcate the trial [Docket 356] are both **DENIED as moot**.

Accordingly, the court **FINDS** that defendant NSRC is liable to plaintiff Harris for a breach of its duty to inspect and maintain a railroad track, which proximately caused the derailment, injuring the plaintiff. The only remaining issues for trial are the compensatory damages to be awarded to the plaintiff.

## I.      Background

This case arises out of the derailment of a train, operated by the defendant, while traveling through a coal loading facility (the "loadout"). The derailment resulted in a rail car striking a loadout support beam, which caused the loadout building to collapse on top of the plaintiff, who was working at the loadout at the time.

The basic underlying facts of this case are undisputed. On July 21, 2009, the plaintiff Harris was working at the Black Bear Preparation Plant on the second floor of a seven-story loadout, which was situated directly above and adjacent to the Ben Creek Spur of railroad track. The loadout was owned and operated by Cobra Natural Resources ("Cobra"), Harris's employer. The Ben Creek Spur of track was owned and operated by Norfolk Southern Railway Company ("NSRC"). At approximately 7:30 a.m. on July 21, 2009, NSRC employees backed an empty train of freight rail cars over an area of track running directly below and through the loadout

where Harris was working. A nine-foot section of rail head separated due to an internal head web defect. When NSRC employees ran the rail cars over this portion of the damaged track, several cars derailed. One of these cars struck the loadout's support beams, which caused the loadout to collapse while Harris was still inside. As a result, Harris suffered physical and mental injuries.

## II.    Procedural History

On July 18, 2011, the plaintiff filed his Complaint in the Circuit Court of Mingo County, West Virginia. The complaint alleged "Negligence of Norfolk Southern," which is the plaintiff's substantive negligence claim against NSRC, and "Reprehensible Conduct of Norfolk Southern," which appear to be the plaintiff's claim of punitive damages against NSRC. The Complaint originally stated that because NSRC was in the exclusive control of the rail cars and railroad tracks in the area, "Mr. Harris does not and cannot know without discovery the precise acts and omissions that led Norfolk Southern's rail cars to derail, crash into and collapse the loading facility with Mr. Harris inside." (Compl. [Docket 1-1], at ¶ 27). Since then, the plaintiff appears to have alleged precise acts and omissions for which he seeks to hold NSRC liable. Specifically, with respect to track inspection and maintenance, the plaintiff alleges that (1) NSRC failed to adequately inspect and maintain its tracks and (2) NSRC failed to provide adequate drainage. With respect to improper train handling, the plaintiff alleges that (1) the conductor failed to protect the shove by riding the rear of the train as required under FRA regulations and NSRC operating rules; (2) NSRC was operating the train at an excessive speed; (3) NSRC was operating the train at an excessive amperage; (4) NSRC was operating the train with excessive powered axles; and (5) NSRC violated certain radio communication rules.

On July 21, 2011, NSRC removed the case to this court. This court has subject-matter jurisdiction over the case based on diversity jurisdiction. Subsequently, NSRC brought third-

party claims against Cobra and Sperry Rail Services, Inc. ("Sperry") for indemnity. Sperry brought counterclaims against NSRC and cross claims against Cobra, which also filed cross claims against Sperry. A partial settlement and subsequent partial dismissal order removed all claims by NSRC and Cobra against Sperry, and all claims by Sperry against NSRC and Cobra; consequently, Sperry is no longer a party to this action in any capacity. (*See* Notice of Partial Settlement [Docket 135]; Partial Dismissal Order [Docket 144]). NSRC later filed an amended third-party complaint against Cobra, asserting indemnity under two different agreements [Docket 192]. This third-party complaint is the subject of the three motions for summary judgment between Cobra and NSRC, discussed in a separate Memorandum Opinion and Order.

In NSRC's Answer to the plaintiff's Complaint [Docket 7], it raised an affirmative defense that "[t]he Plaintiff's claims are preempted, in whole or in part, by federal law, including but not limited to, the Federal Rail Safety Act, of 1970, 49 U.S.C. § 20101, *et seq.*, and regulations issued by the Secretary of Transportation thereunder." (Answer of Def., Norfolk S. Ry. Co., to Compl. of Charles Eugene Harris [Docket 7], at 12). This affirmative defense is partly the subject of the three motions for summary judgment between NSRC and Harris discussed herein.

## III.   The Motions for Summary Judgment

The court notes at the outset that the instant case is one of state law negligence. The elements of a state law negligence claim, generally, are (1) a duty; (2) a breach; (3) proximate cause; and (4) damages. In the instant case, however, we deal with issues of railroad safety, where the determination of the duty depends on the interplay between state law and federal law under the Federal Rail Safety Act of 1970 ("FRSA"). If federal regulations have established a standard of care, then under the Supremacy Clause of the United States Constitution, courts

apply the federal standard of care in determining any liability. If federal regulations have not established a standard of care, or if preemption is expressly exempted under the FRSA, then we apply the state law standard of care.

The summary judgment motions between the plaintiff and NSRC all relate to the state law negligence claim.[2] These motions discuss several primary issues. First, the motions discuss federal preemption of the plaintiff's state law negligence claims under the FRSA.[3] Second, the motions discuss the plaintiff's claims regarding track inspection and maintenance. Third, the motions discuss the plaintiff's claims regarding improper train handling. Finally, the motions discuss the plaintiff's claims for punitive damages. The court will first address the motions for summary judgment, and then address the plaintiff's motion regarding spoliation of relevant evidence and the defendant's motion for bifurcation.

### A.    Motions for Summary Judgment – Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in

---

[2]     The three motions for summary judgment regarding issues of indemnification between Norfolk Southern Railway Company and Cobra Natural Resources, LLC, will be addressed in a separate Memorandum Opinion and Order.

[3]     Both parties appear to move for summary judgment on both the issue of federal preemption and the merits of the plaintiff's state law claims. Although the plaintiff's motion initially appears to argue only exemption from preemption, the bulk of the memoranda argue that NSRC actually violated various standards of care. Similarly, NSRC's motion appears to argue both that certain claims are preempted under federal law *and* that it is entitled to summary judgment on the merits of the state law claims. The court therefore reads the instant motions as moving for summary judgment on both issues—exemption from preemption *and* violations of the standards of care.

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B.    Federal Preemption of State Law Negligence Claims Under the Federal Rail Safety Act

In its answer to the plaintiff's Complaint, NSRC raised an affirmative defense that the plaintiff's state law negligence claims are preempted by the FRSA. Both parties seek summary judgment on this issue.

The preemption section of the FRSA, 49 U.S.C. § 20106, provides for federal preemption of state law claims related to railroad safety and security.[4] Section 20106(a) first provides that "[l]aws, regulations, and orders related to railroad safety . . .  shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). It then provides, in relevant part, that "[a] State

---

[4]    Because this case involves only railroad safety, the language in the statute related to railroad security is generally omitted from this opinion.

may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement," and that:

> A state may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety . . . when the law, regulation, or order—
>> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
>> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>> (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a)(2). Congress amended § 20106 in 2007 to add section (b), which is at the heart of the instant case.[5] This section provides, in relevant part:

> (b) Clarification regarding State law causes of action.—(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—
>> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation . . . covering the subject matter as provided in subsection (a) of this section;
>> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by [the Secretary]; or
>> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

---

[5]     The Federal Railroad Administration summarized Congress's amendment to § 20106, stating:

> Congress was moved to amend Section 20106 by two court cases, *Lundeen v. Canadian Pacific Ry. Co.*, 507 F. Supp. 2d 1006 (D. Minn. 2007), and *Mehl v. Canadian Pacific Ry., Ltd.*, 417 F. Supp. 2d 1104 (D.N.D. 2006), which left without a legal remedy tort plaintiffs injured in a hazardous material release from a train wreck in Minot, ND.

Passenger Equipment Safety Standards, 75 Fed. Reg. 1180, 1208 (Jan. 8, 2010). The courts in those cases had held that preemption barred private claims for violations of FRA regulations. In other words, the FRSA "absolved railroads from any common law liability for failure to comply with the safety regulations." *Mehl*, 417 F. Supp. 2d at 1120. Accordingly, the amendment to § 20106 "makes clear that, as the Supreme Court held in [*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993)], regulations or orders issued by the Secretary of Transportation preempt the State standard of care, but not the underlying cause of action in tort." 75 Fed. Reg. at 1208.

49 U.S.C. § 20106(b). Federal regulations cover the subject matter of the relevant state law at issue in this case, and would therefore preempt state law unless one of the exemptions under § 20106 applies.

Preliminarily, both parties slightly misstate the standard under § 20106(b). The plaintiff states that "[u]nder section 20106(b)(1), state law claims are not preempted when the railroad fails to comply with its own internal operating procedures, or when the claims are premised on a railroad's failure to comply with FRSA regulations." (Pl. Charles Eugene Harris's Mem. of Law in Supp. of his Mot. for Partial Summ. J. [Docket 250], at 3-4) (internal citations omitted). NSRC states that "[s]tate law claims are preempted when a federal regulation covering the subject matter of the claim is issued, unless one of three specific exceptions to preemption apply: (1) where a railroad failed to comply with the federal standard of care . . ." (Norfolk S. Ry. Co.'s Mem. of Law in Supp. of its Mot. for Summ. J. on Track Inspection & Maintenance Claims [Docket 271], at 5-6).

To clarify, the plain language of the statute states that "[n]othing in this section shall be construed to preempt an action under State law . . . *alleging* that a party – (A) has failed to comply with the Federal standard of care . . ." 49 U.S.C. § 20106(b)(1) (emphasis added). Therefore, to exempt the state law claims from preemption under (b)(1)(A), the plaintiff does not need to *show* that the defendant violated a federal standard of care—the plaintiff need only show that it is *alleging* that the defendant violated a federal standard of care. *See, e.g.*, *Irish v. BNSF Ry. Co.*, No. 08-cv-469-bbc, 2010 WL 4293578, at *2 (W.D. Wis. Oct. 21, 2010) (stating that "a plaintiff may proceed with a state law cause of action so long as she is not suing under a standard that is different from federal law."); *Gauthier v. Union Pacific R.R. Co.*, 644 F. Supp. 2d 824, 835 (E.D. Tex. 2009) (stating that Congress clarified "that a state law cause of action is not

preempted when it is based on an allegation that a party failed to comply with a federal standard of care . . ."). Similarly, to exempt the state law claims from preemption under (b)(1)(B), the plaintiff need only show that it is *alleging* that the defendant violated internal rules, plans, or standards created pursuant to a regulation or order. *Gauthier*, 644 F. Supp. 2d at 835.

The issues before the court regarding preemption are therefore (1) whether the plaintiff has alleged violations of federal standards of care; (2) whether NSRC's internal rules regarding track inspection and maintenance are created pursuant to a federal regulation or order; and (3) whether the Ben Creek Spur is a local safety hazard.

### i.     The Plaintiff has Alleged Violations of Federal Standards of Care, which are Exempt from Preemption Under § 20106(b)(1)(A)

The plaintiff has alleged violations of federal regulations related to track maintenance and inspection, and improper train handling. These regulations include 49 C.F.R. §§ 213.1(a), 213.5(a), and 213.233 on track maintenance and inspection, and §§ 218.99, and 213.9 on improper train handling. With respect to the claims on track maintenance and inspection, NSRC does not argue that the plaintiff fails to allege violations of federal standards of care under 49 C.F.R. §§ 213.1(a), 213.5(a), and 213.233. Rather, NSRC argues that it did not violate these federal standards. With respect to the claims on improper train handling, 49 C.F.R. §§ 218.99 and 213.9, NSRC has conceded that "specific regulations governed conductor positioning during the shove, and the maximum speed at which NSRC's train could travel on the Ben Creek Spur." (Norfolk S. Ry. Co.'s Resp. to Pl.'s Mot. for Partial Summ. J. [Docket 324], at 13) (internal citations omitted). Accordingly, I **FIND** that, as a matter of law, the plaintiff's state law claims under these regulations are not preempted by the FRSA. The plaintiff's motion for summary judgment on the issue of federal preemption is therefore **GRANTED**, and the defendant's motion for summary judgment on this issue is **DENIED**.

ii.   **NSRC's Internal Rules Regarding Track Maintenance and Inspection are not Created "Pursuant to a Regulation or Order Issued" by the Secretary of Transportation and the Plaintiff's Allegations of NSRC's Violations of its Internal Rules are Preempted by § 20106**

The plaintiff argues, "[a]s a preliminary matter, NSRC is bound by the heightened standard of care set forth in its internal rules because it adopted those rules pursuant to federal regulations." (Pl. Charles Eugene Harris's Mem. of Law in Supp. of his Mot. for Partial Summ. J. [Docket 251], at 7). As noted *supra*, 49 U.S.C. § 20106(b) provides an exemption to federal preemption where an action under State law seeking damages for personal injury, death, or property damage alleges that a party "has failed to comply with its own plan, rule, or standard that it created *pursuant to a regulation or order issued by [the Secretary of Transportation]*." 49 U.S.C. § 20106(b)(1)(B) (emphasis added). The phrase "pursuant to" is at the heart of the dispute on this issue.

The plaintiff asserts that the plain language of the statute, as well as the most recent district court opinion on this issue, *Skrovig v. BNSF Ry. Co.*, 855 F. Supp. 2d 933 (D.S.D. 2012), indicates that the FRSA regulations at issue expressly contemplate that railroads would adopt internal rules to ensure that it meets the federal standard of care and that NSRC is liable for violations of its internal rules. NSRC argues that any alleged violations of its internal rules do not subject it to liability because the rules were not created "pursuant to a regulation or order" under 49 U.S.C. § 20106(b)(1)(B). (Norfolk S. Ry. Co.'s Resp. to Pl.'s Mot. for Partial Summ. J. [Docket 324], at 6). Rather, according to NSRC, the phrase "pursuant to a regulation or order" requires that the Federal Railroad Administration ("FRA") mandate that railroads adopt such internal rules, and therefore, internal rules railroads voluntarily adopted that exceed the federal standards of care are not created "pursuant to" a regulation or order. Both parties claim that the other's interpretation of 49 U.S.C. § 20106(b)(1)(B) runs directly contrary to the plain language

of the statute. As discussed below, I **FIND** that NSRC's internal rules regarding track maintenance and inspection are not created "pursuant to a regulation or order" issued by the Secretary of Transportation, and therefore any allegations that NSRC has violated its internal rules are preempted. Accordingly, the plaintiff's motion for summary judgment on this issue is **DENIED**, and the defendant's motion for summary judgment on this issue is **GRANTED**.

> a.      **Law: Interpretation of 49 U.S.C. § 20106(b)(1)(B)**

The FRA has interpreted 49 U.S.C. § 20106(b)(1)(B). It stated first that this subsection "precisely addresses an issue presented in Lundeen that Congress wished to rectify: it allows plaintiffs to sue a railroad in tort for violation of its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries." Passenger Equipment Safety Standards, 75 Fed. Reg. 1180, 1209 (Jan. 8, 2010). The FRA went on to state, in relevant part:

> None of those exceptions covers a plan, rule, or standard that a regulated entity creates for itself in order to produce a higher level of safety than Federal law requires, and such plans, rules, or standards were not at issue in Lundeen. The key concept of Section 20106(b) is permitting actions under State law seeking damages for personal injury, death, or property damage to proceed using a Federal standard of care. *A plan, rule, or standard that a regulated entity creates pursuant to a Federal regulation logically fits the paradigm of a Federal standard of care—Federal law requires it and determines its adequacy. A plan, rule, or standard, or portions of one, that a regulated entity creates on its own in order to exceed the requirements of Federal law does not fit the paradigm of a Federal standard of care—*Federal law does not require it and, past the point at which the requirements of Federal law are satisfied, says nothing about its adequacy. That is why FRA believes that Section 20106(b)(1)(B) covers the former, but not the latter.

*Id.* (emphasis added). Finally, the FRA recognized that its interpretation of § 20106(b)(1)(B) is consistent with the purpose of the statute to improve railroad safety; this interpretation would "encourage[e] regulated entities to do more than the law requires and would be disserved by

11

increasing potential tort liability of regulated entities that choose to exceed Federal standards, which would discourage them from ever exceeding Federal standards again." *Id.*

The plaintiff argues that NSRC's reading of the FRA interpretation "would collapse the independently effective and discrete provisions of section 20106 by requiring a violation of a federal regulation in order to find a violation of a railroad's internal rule." (Pl. Charles Eugene Harris's Reply in Supp. of his Mot. for Partial Summ. J. (Doc. 250) [Docket 339], at 11). I disagree. Section 20106(b)(1)(A) exempts a State law action from preemption when a violation of a federal standard of care *established by a regulation or order* is alleged. Section 20106(b)(1)(B) exempts a State law action from preemption when a violation of a standard of care established not by regulation or order, but by the railroad *pursuant to* a regulation or order, is alleged. In other words, the FRA and NSRC's reading of § 20106(b)(1)(B) are consistent with the plain language of the statute. Certain FRA regulations set forth standards of care which railroads must comply with, while other FRA regulations require railroads themselves to adopt internal plans, rules, or standards of care. *Compare, e.g.*, 49 C.F.R. § 213.233 *with* 49 C.F.R. § 214.341. Section 20106(b)(1)(A) addresses the former, while § 20106(b)(1)(B) addresses the latter.

### b.     Law: *Skrovig v. BNSF Ry. Co.*, 855 F. Supp. 2d 933 (D.S.D. 2012)

Case law interpreting the 2007 amendments to § 20106 is scant, and both parties cite to and discuss *Skrovig* at length, offering contrary interpretations of its discussion and holding. The plaintiff cites *Skrovig* for the proposition that where FRA regulations permit and "contemplate" that railroads may "adopt and enforce additional or more stringent safety rules not inconsistent with the federal regulations," these rules "come within the exemption from preemption under 49 U.S.C. § 20106(b)(1)(B)." *Skrovig*, 855 F. Supp. 2d at 944-45. NSRC argues that *Skrovig* is

inapplicable because the internal railroad rules at issue in that case "were adopted and implemented pursuant to a specific federal mandate." (Norfolk S. Ry. Co.'s Resp. to Pl.'s Mot. for Partial Summ. J. [Docket 324], at 6). NSRC distinguishes regulations that allow a railroad to adopt voluntary rules or standards from regulations that require railroads to adopt certain rules and standards.

*Skrovig* involved an accident on a railroad track where the plaintiff's vehicle collided with a ballast regulator, a piece of on-track maintenance equipment owned and operated by the railroad company BNSF. The plaintiff claimed that BNSF failed to warn the general public of the approach of the ballast regulator and specifically "that BNSF failed to act in compliance with its *own policy* of flagging grade crossings when hazardous conditions exist." *Skrovig*, 855 F. Supp. 2d at 941 (emphasis in original) (internal quotations omitted). Accordingly, the plaintiff's claim was based on the railroad's alleged violation of its own internal safety rules, rather than a violation of a standard of care established by federal regulations. In response, the railroad BNSF argued that "an alleged violation of its own rules does not create a negligence claim because the BNSF rules cited by plaintiff are not included within 49 U.S.C. § 20106(b)(1)(B)." *Skrovig*, 855 F. Supp. 2d at 943. *Skrovig*'s holding is not necessarily clear. The court ultimately concluded that:

> MWOR 6.50.2 and Engineering Rule 14.4.1 are company rules which federal regulations contemplate should be adopted and enforced by BNSF. These rules come within the scope of the federal regulations upon which plaintiff may base her state tort claim action for negligence. *Alternatively*, the rules come within the exemption from preemption under 49 U.S.C. 20106(b)(1)(B).

*Id.* at 945 (emphasis added). However, the language in the court's opinion indicates that the primary concern was that "Federal regulation 49 C.F.R. § 214.341 requires BNSF to develop internal rules for on-track safety for maintenance equipment such as a ballast regulator." *Id.* at

943. The court held that "[d]efendant's argument the operating rules, that is, the MWOR and Engineering Rules, were not developed pursuant to a regulation of the Secretary of Transportation is without merit" *because* § 214.341 required them to develop such internal rules.

49 C.F.R. § 214.341 states that "[e]ach employer *shall* include in its on-track safety program specific provisions for the safety of roadway workers who operate or work near roadway maintenance machines. These provisions *shall* address [various issues]." 49 C.F.R. § 214.341(a) (emphasis added). BNSF argued that the regulation at issue did not address collisions between maintenance equipment and motor vehicles, but only railroad employees. The most plausible reading of *Skrovig* is that the court found that "Federal regulation 49 C.F.R. § 214.341 *requires* BNSF to develop internal rules for on-track safety for maintenance equipment such as a ballast regulator." *Id.* at 943 (emphasis added). Because the regulation required BNSF to develop internal rules on this issue, then, the MWOR and Engineering Rules were created "pursuant to" a federal regulation.

The wrinkle in *Skrovig* arose because BNSF's MWOR and Engineering Rules apparently went above and beyond what BNSF was required to adopt under § 214.341. BNSF's MWOR and Engineering Rules apparently intended to protect more than just railroad employees, including "the communities in which [BNSF] serve[s]." *Id.* at 945. The court's finding that the MWOR and Engineering Rules were "voluntary measures contemplated by various highway safety and railroad regulations which permit a railroad to adopt and enforce additional or more stringent safety rules not inconsistent with federal regulations" was important to the case because the court needed to extend liability to the specific provisions within BNSF's internal rules. *Id.* at 944. In other words, the court found that, *because* BNSF's internal rules were created "pursuant to" § 213.341, and the specific provisions within BNSF's internal rules voluntarily protecting more

14

than just railroad employees were contemplated by federal regulations, BNSF is liable for those internal rules even though they went above and beyond what § 213.341 required.

### c.    Analysis

Here, the plaintiff does not allege that any regulation requires NSRC to adopt their internal rules. 49 C.F.R. § 213.1(a) provides: "This part prescribes minimum safety requirements for railroad track that is part of the general railroad system of transportation." 49 C.F.R. § 213.1(a). The regulation goes on to say that "[t]his part does not restrict a railroad from adopting and enforcing additional or more stringent requirements not inconsistent with this part." *Id.* While the regulation *allows* a railroad to adopt and enforce additional or more stringent rules, it establishes the federal standard of care and does not *require* railroads to adopt any internal rules or plans, or standards like § 213.341 does. Similarly, no other regulations cited by the plaintiff with regard to track maintenance and inspection require that NSRC adopt any internal rules, plans, or standards. *See, e.g.*, 49 C.F.R. §§ 213.5(a), 213.233.

With respect to the plaintiff's track maintenance and inspection claims, therefore, all allegations regarding violations of NSRC's internal rules are preempted by federal law. The same cannot necessarily be said for all of the plaintiff's improper train handling claims, as § 218.99 does require railroads to adopt certain rules regarding shoving movements. *See* 49 C.F.R. § 218.99(a)(1) ("Each railroad shall adopt and comply with an operating rule which complies with the requirements of this section."). However, the plaintiff appears to allege that the violation of NSRC's internal rules on shoving movements and the FRA's regulations are essentially the same. (Pl. Charles Eugene Harris's Mem. of Law in Supp. of his Mot. for Partial Summ. J. [Docket 250], at 17) (". . . the conductor's duty on July 21, 2009 was to 'protect the shove'—that is, to ride the rear of the train *as required by both NSRC's operating rules and the*

*FRA's regulations*—but [] he did not fulfill that duty."). Accordingly, the plaintiff's motion for summary judgment on the issue of federal preemption on claims alleging violations of NSRC's internal rules, procedures, and standards is **DENIED**, and NSRC's motion for summary judgment on the issue of federal preemption on its internal rules regarding track maintenance and inspection is **GRANTED**.

### iii.  The Ben Creek Spur is not a "Local Safety Hazard" under 49 U.S.C. § 20106(a)(2).

Once the party advocating preemption under § 20106(a)(2) shows that a federal law, regulation, or order covers the same subject matter as the state law, regulation, or order it seeks to preempt, "the burden shifts to the party resisting preemption to prove that the state law, regulation, or order meets all three requirements of the savings clause in § 20106(a)(2)." *Duluth, Winnipeg & Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008).

The plaintiff addresses the "local safety hazard" exemption as an alternative basis for exempting his state law claims from preemption. According to the plaintiff, "NSRC's conduct on the Ben Creek Spur constitutes [] an essentially local safety hazard." (Pl. Charles Eugene Harris's Reply in Supp. of his Mot. for Partial Summ. J. (Doc. 250) [Docket 339], at 19-20). The plaintiff essentially argues that FRSA regulations do not cover the subject matter of the state law claim here and that the hazard at issue, "operating a train over railroad track that has not been maintained," is a local safety hazard. (*Id.* at 20).

The plaintiff relies on the history of the Ben Creek Spur—that it "was widely known to suffer from a lack of maintenance long before the July 21, 2009 derailment." (Pl. Charles Eugene Harris's Reply in Supp. of his Mot. for Partial Summ. J. (Doc. 250) [Docket 339], at 20). In other words, the thrust of the plaintiff's contention is that the Ben Creek Spur has not been adequately

maintained for years, and therefore created a local safety hazard. The plaintiff lends no further support to this argument, and I do not find it persuasive.

First, the federal regulations related to track inspection and maintenance cover the subject matter at hand. *See* 49 C.F.R. § 213.1 *et seq*. Next, as the FRA states, and as courts have also recognized, this exception is construed very narrowly, enabling "States to respond to local situations which are not statewide in character and not capable of being adequately encompassed within uniform national standards." Hazardous Materials: Improving the Safety of Railroad Tank Car Transportation of Hazardous Materials, 74 Fed. Reg. 1770, 1791 (Jan. 13, 2009); *see also Stone v. CSX Transp., Inc.*, 37 F. Supp. 2d 789, 795-96 (S.D. W. Va. 1999); *Duluth, Winnipeg & Pac. Ry. Co.*, 529 F.3d at 798 (collecting circuit cases defining "essentially local safety hazards"). As the Eighth Circuit held, "[i]f the local situation is actually statewide in character *or* capable of being adequately encompassed within national uniform standards, it will not be considered an essentially local safety hazard." *Duluth, Winnipeg & Pac. Ry. Co.*, 529 F.3d at 798. Even if the plaintiff is correct that federal regulations currently do not govern the hazard at issue, the plaintiff has not shown that lack of maintenance cannot be *capable* of being adequately encompassed within national uniform standards.

Moreover, the plaintiff relies on *Stone* for its argument that the Ben Creek Spur can be considered an essentially local safety hazard. But the facts in *Stone* illustrate the unique situations that courts are concerned with. There, the court pointed to several facts regarding the Ventroux Hollow grade crossing:

> [T]he sight lines are short and drivers sitting at the crossing cannot see a train coming until it is nearly upon them. Moreover, the only road out of the hollow lies across the railroad tracks. Repeated malfunctions have purportedly had a deleterious effect on the activities of persons living in Ventroux Hollow and visitors to Ventroux Hollow. People trying to go to work, visit the doctor, respond to a family crisis, or pick up children from somewhere are severely constrained.

17

*Stone*, 37 F. Supp. 2d at 796. The court went on to discuss the repeated false activations at issue in *Stone*:

> One signal malfunction can be annoying or disruptive. Frequent malfunctions will eventually have a serious impact on day-to-day activities. Drivers accustomed to false activations would be constantly faced with a Hobson's choice—remain trapped in Ventroux Hollow or venture past the signal apparatus and take your chances on being hit by a train. An activated signal under the circumstances is virtually meaningless. Local residents also purportedly attempted to complain about the repeated malfunctions on many occasions, to no avail. The railroad either did not respond or was not successful in eliminating the frequent recurrences. The malfunctions continued. Local residents had, plaintiff asserted, given up because of their lack of success in getting the railroad to respond.

*Id.* The court concluded: "Taking the terrain, the sight lines, and the limited access into consideration, *and* assuming that there were repeated malfunctions of the signal apparatus at that crossing, the Court would likely conclude that the Ventroux Hollow grade crossing was a local hazard." *Id.*

Taking the instant allegations into consideration, all that the plaintiff really contends is that "Ben Creek Spur was widely known to suffer from a lack of maintenance long before the July 21, 2009 derailment." (Pl. Charles Eugene Harris's Reply in Supp. of his Mot. for Partial Summ. J. (Doc. 250) [Docket 339], at 20). This is a far cry from the unique situation posed in *Stone*, and nowhere does the plaintiff explain why the alleged hazard is incapable of being adequately encompassed within national uniform standards, particularly considering that federal regulations already encompass track maintenance and inspection. Thus, the plaintiff has not met his burden of proof that the Ben Creek Spur is a local safety hazard. Accordingly, I **FIND** that the "local safety hazard" exemption to preemption under § 20106(a)(2) does not apply to the instant case. Accordingly, the plaintiff's motion for summary judgment on this issue is **DENIED**.

### C.    The Plaintiff's Claims Regarding Track Inspection and Maintenance

With respect to the plaintiff's claims regarding track inspection and maintenance, the issues are (1) whether NSRC conducted visual inspections under 49 C.F.R. § 213.233; (2) whether NSRC exercised reasonable care and either knew or had notice of the defect, thus triggering its obligation to remedy the defect; and (3) whether NSRC violated 49 C.F.R. §§ 213.33, 213.103, with respect to adequate drainage.

### i.    There is no Genuine Issue of Material Fact that NSRC Failed to Conduct Visual Inspections Under 49 C.F.R. § 213.233

The plaintiff contends that "there is *no* evidence that NSRC complied with FRSA-mandated inspections and maintenance." (Pl. Charles Eugene Harris's Mem. of Law in Supp. of his Mot. for Partial Summ. J. [Docket 250], at 10). The plaintiff's support for this contention is that "the track, road bed, and ballast of the Ben Creek Spur was fouled with debris, dirt, and coal in the *years* leading up to the July 21, 2009 derailment," and that NSRC personnel knew about the poor condition of the track. (*Id.*) (emphasis in original). The plaintiff also argues that NSRC witnesses have admitted to clearing coal from portions of the spur's track in order to make FRA-required inspections "that would otherwise be impossible to make" due to the coal and dirt, but that there is no evidence this was done along the entire Ben Creek Spur. (*Id.*).

In short, the plaintiff essentially argues that because the rails on the Ben Creek Spur were constantly fouled with debris, dirt and coal, NSRC knew or should have known that it could not adequately make FRA-required inspections. "Simply, there was no way to make these inspections because the rails were almost completely covered with debris."[6] (*Id.* at 11).

---

[6]    The plaintiff refers to a statement made by NSRC's Vice President of Engineering, T.J. Drake— "We are all to blame for this derailment"—suggesting that it is proof of NSRC's liability and non-compliance with FRA standards in this case. It is not, however, entirely clear in what context this statement was made. The e-mail chain suggests that issues regarding the track chart and "our testing

NSRC asserts that "[t]here is no dispute that NSRC conducted the visual inspections required by the FRA under 49 C.F.R. § 213.233." (Norfolk S. Ry. Co.'s Resp. to Pl.'s Mot. for Partial Summ. J. [Docket 324], at 8). It argues that the plaintiff's motion is "devoid of evidence that NSRC violated a specific FRA regulation relative to track inspection or maintenance with respect to the condition of the track at the time of the derailment." (*Id.* at 9).

I **FIND** that there is no genuine issue of material fact that NSRC failed to conduct the "visual inspections" contemplated by 49 C.F.R. § 213.233. The language of the regulation states that "[e]ach inspection shall be made on foot or by riding over the track in a vehicle at a speed that allows the person making the inspection *to visually inspect the track structure* for compliance with this part." 49 C.F.R. § 213.233(b) (emphasis added). While the regulation goes on to say that "mechanical, electrical, and other track inspection devices may be used to supplement visual inspection," the key word is "supplement." *Id.* A visual inspection must still be performed. The plain language of the regulation requires that the inspector "visually inspect the track structure." In order to visually inspect the track structure, the inspector must have been able to *see* it.

The evidence here shows that condition of the track was such that visual inspections were impossible. Testimony from NSRC employees Jack Stepp, Ricky Lee, Fred Ream, and Richard Saunders all indicate that the track was covered with debris, dirt, and coal to the point where inspections could not be done. (*See* Stepp Dep. [Docket 250-12], at 74:13—80:1; 99:8—100:10, July 16, 2012; Lee Dep. [Docket 250-13], at 20:2—20:4; 22:24—34:6, July 16, 2012; Ream Dep. [Docket 250-14], at 14:19—16:24, Sept. 12, 2012; Saunders Dep. [Docket 250-15], at

---

requirements" underlie the statement. In other words, it may just as well be plausible that Drake's statement was an admission that NSRC failed to comply with their *internal* rules and procedures.

130:7—131:8, Dec. 9, 2010). Specifically, for example, Jack Stepp testified, with regard to the broken rail that caused the derailment:

> Q.    Okay. Did the – did you make any observations or any conclusions with the length of the crack along the rail, how long it was?
>
> A.    Well, I really couldn't see until after we cleaned the stuff out there and everything really what, you know, it actually looked like.
>
> Q.    I understand. I mean even then, were you able to make an observation of how long it looked like the crack ran?
>
> A.    I couldn't tell how long it ran or how far it ran. You know, I couldn't, you know, tell at all because it was still under coal and everything else.

(Stepp. Dep. [Docket 250-12], at 99:23—100:10, July 16, 2012). In its filings and at the summary judgment hearing, NSRC did not dispute that the track was covered with debris, dirt, and coal, such that it could not be seen. Rather, NSRC argued that "there are no provisions [in FRA regulations] that prohibit the presence of material on or around the track of rail." (*Id.* at 10). NSRC further argues that, "[t]aken to its logical end, Plaintiff contends that the presence of any material on or around railroad tracks that precludes complete visual inspection of the entirety of the track or track structure precludes compliance with FRA inspection requirement." (*Id.*). In its response and at the summary judgment hearing, NSRC provided the example of railroad tracks running through city streets or roadways in urban areas, and railroad tracks in areas of the United States that are seasonally covered in snow or leaves. (*Id.* at 11). However, the FRA regulation is clear: the person making the inspection must visually inspect the track structure.

Accordingly, I **FIND** that there is no genuine issue of material fact that NSRC failed to perform visual inspections under § 213.233, and **GRANT** the plaintiff's motion for summary judgment on this issue. To any extent that NSRC moves for summary judgment on this issue, it is also **DENIED**.

ii.     **There is no Genuine Issue of Material Fact that NSRC Knew or Had Notice of the Rail Defect that Caused the Derailment**

NSRC argues that railroads are only subject to responsibility for compliance with respect to defects that the railroad "knows or has notice" of. 49 C.F.R. § 213.5(a). First, NSRC's arguments on this point are, however, confusing to say the least, as NSRC simply attacks the testimony of plaintiff's expert Alan Blackwell.[7] It appears to argue that despite reasonable care, it could not have known or have had notice of the defect which caused the derailment. The plaintiff responds by arguing that NSRC failed to exercise reasonable care, and is therefore held responsible because it "knew or should know" that the broken rail existed.

I **FIND** that there is no genuine issue of material fact that NSRC knew or had notice of the rail defect. The FRA discussed this standard of liability, stating in part that "[e]ven if a railroad has not recorded those defects, notice may include constructive knowledge of defects that, by their nature, would have had to be in existence when the railroad was last required to perform an inspection." Track Safety Standards, 63 Fed. Reg. 33992, 33996 (June 22, 1998). NSRC failed to conduct adequate visual inspections, and the evidence in this case establishes that the broken rail had existed for some time. Accordingly, I **DENY** NSRC's motion for summary judgment on this issue.

iii.     **The Plaintiff has not Provided any Evidence as to Whether NSRC Violated 49 C.F.R. §§ 213.33, 213.103, with Respect to Drainage**

The plaintiff spends the bulk of its track maintenance and inspection argument on the visual inspection issue, and alleges only in passing that NSRC violated 49 C.F.R. §§ 213.33, 213.103 on the adequacy of drainage. (*See* Pl. Charles Eugene Harris's Mem. of Law in Supp. of

---

[7]     NSRC's arguments on several issues in its motion for summary judgment reference its motion to exclude the testimony of Alan Blackwell, one of the plaintiff's expert witnesses. (*See generally* Norfolk S. Ry. Co.'s Mem. of Law in Supp. of its Mot. for Summ. J. on Track Inspection & Maintenance Claims [Docket 271], at 13-18). To the extent that this motion argues a motion *in limine* within a motion for summary judgment, it unnecessarily confuses the issues.

his Mot. for Partial Summ. J. [Docket 250], at 10). The plaintiff argues, in effect, that inadequate drainage led to the corrosion of the broken rail. NSRC argues that the plaintiff provides no evidence that improper drainage conditions and ballast conditions near the rail that fractured caused the derailment. Neither the plaintiff's memorandum of law in support of its motion for summary judgment nor his response to NSRC's motion for summary judgment provides any evidence that NSRC actually failed to comply with 49 C.F.R. § 213.33, 213.103. Rather, the plaintiff essentially asserts that because the broken rail had corroded, it must have been at least partly due to NSRC's failure to comply with the drainage requirements. This conclusory argument does not meet the plaintiff's burden to provide more than a mere scintilla of evidence to preclude summary judgment on this issue. Accordingly, I **DENY** the plaintiff's motion for summary judgment on the issue of drainage and track ballast under 49 C.F.R. § 213.33, 213.103, and **GRANT** NSRC's motion for summary judgment on this issue.

### D.     The Plaintiff's Claims Related to Improper Train Handling

The plaintiff makes various arguments related to NSRC's alleged improper train handling, including that: (1) the conductor failed to protect the shove by riding the rear of the train as required under FRA regulations and NSRC operating rules; (2) NSRC was operating the train at an excessive speed; (3) NSRC was operating the train at an excessive amperage; (4) NSRC was operating the train with excessive powered axles; and (5) NSRC violated certain radio communication rules.[8] For all of these claims, NSRC argues that there is no evidence that any of these claims were the proximate cause of the derailment and subsequent injury to the plaintiff. Therefore, the issue before the court is whether the plaintiff has produced any evidence

---

[8]        The plaintiff moved for summary judgment on only the first two issues, while NSRC moved for summary judgment on all five.

that any of the alleged acts or omissions relating to improper train handling was the proximate cause of the injury to him.

### i.    The Plaintiff has Failed to Show that Any Improper Train Handling Proximately Caused his Injury

It is a "fundamental legal principle . . . that negligence . . . must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury [in order to be actionable]." *Wolfe v. United States*, No. 2:07-cv-00560, 2009 WL 1080852, at *3 (S.D. W. Va. Apr. 22, 2009) (quoting West Virginia law). Furthermore, under West Virginia law, "[t]he proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred." *Id.* Finally, "proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder." *Sakaria v. Trans World Airlines*, 8 F.3d 164, 172 (4th Cir. 1993).

I **FIND** that the plaintiff has failed to provide any evidence that any of the alleged acts or omissions related to improper train handling were the proximate cause of his injury. For example, the plaintiff's argument that the conductor's positioning proximately caused the derailment is that "had the conductor been protecting the shove by riding the rear of the train, he very well may have been able to detect the nine foot section of broken rail." (Pl. Charles Eugene Harris's Mem. of Law in Supp. of his Mot. for Partial Summ. J. [Docket 250], at 17). The plaintiff also cites testimony about other occasions in which conductors have prevented derailments. However, this evidence does not show that *this* derailment was proximately caused by the conductor's location on *this* train. It creates only a "mere possibility" of causation, which is insufficient. Similarly, the plaintiff argues that the train was traveling at a speed of 10.7 miles

per hour on a track with a maximum speed limit of 10 miles per hour.[9] However, the plaintiff offers no evidence that the speed caused the derailment, or that the derailment would not have occurred at a lower speed. The plaintiff also fails to provide any evidence that NSRC's alleged operation of the train at excessive amperage, with excessive powered axles, or that NSRC's alleged violation of radio communication rules were the proximate cause of his injury.

### ii.     *Res Ipsa Loquitur* does not Apply to this Case

Rather than producing any evidence showing that these alleged acts or omissions were the proximate cause of his injury, the plaintiff appears to argue that NSRC's negligence may be presumed under the doctrine of *res ipsa loquitur*. Without specifically referencing the doctrine, the plaintiff's Complaint appears to allege the elements of *res ipsa loquitur*. (*See* Compl. [Docket 1-1], at ¶¶ 27-37).

*Res ipsa loquitur* allows for an inference that the harm suffered by a plaintiff is caused by the negligence of the defendant when "(a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff." *Foster v. City of Keyser*, 202 W. Va. 1, 21 (1997). The application of this doctrine "arises in those circumstances where mere occurrences of certain events in and of themselves suggest negligence, barring another plausible explanation." *Kyle v. Dana Transp., Inc.*, 220 W. Va. 714, 717 (2007).

I **FIND** that the doctrine of *res ipsa loquitur* does not apply here. This is not a case in which there is no other plausible explanation other than the defendant's alleged failure to properly handle its trains. *See, e.g.*, *Thomas v. Monongahela Valley Traction Co.*, 112 S.E. 228,

---

[9]     Whether the track was a Class 1 track with a maximum speed of 10 miles per hour, or a Class 2 track with a maximum speed of 25 miles per hour, is a point of contention between the parties which is noted for the purpose of discussing this issue, but does not need to be addressed on its merits.

231 (W. Va. 1922) ("When the cause of the accident appears, there is no necessity for indulging in such presumptions [of negligence under *res ipsa loquitur*]"). In fact, the cause of the derailment in this case is clear: it occurred as a result of the piece of broken rail. The proximate cause of the broken rail (and therefore the derailment) was NSRC's alleged failure to inspect and maintain the tracks under federal regulations.

Additionally, when a plaintiff "designates specific acts of negligence he assumes the burden of establishing the negligence in the manner specified and the doctrine of res ipsa loquitur becomes inapplicable." *Griffith v. Wood*, 150 W. Va. 678, 687 (1966). As explained by the Supreme Court of Appeals of West Virginia:

> It is within the election of the plaintiff to avail himself of the rule by merely alleging and proving the circumstances of his presence, the accident, and the injuries sustained. He may elect, however, to specifically allege in detail the circumstances which led to the accident and upon which the charge of negligence is based. But, by electing to take this course, he assumes the burden of establishing the negligence in the manner charged, and the rule of Res ipsa loquitur is thereby banished from the case.

*Id.* (quoting *Moore v. Clagett*, 48 App. D.C. 410, 415 (1919)). Although the plaintiff's Complaint originally alleged negligence generally, he has since alleged "in detail the circumstances which led to the accident and upon which the charge of negligence is based." *Id.* Therefore, the doctrine of *res ipsa loquitur* is no longer applicable to this case.

Accordingly, I **DENY** the plaintiff's motion for summary judgment on his claims related to improper train handling, and I **GRANT** NSRC's motion for summary judgment on these claims.

### E.    Punitive Damages

With respect to the plaintiff's claims for track inspection and maintenance, NSRC argues that the plaintiff's claims for punitive damages fail as a matter of law. NSRC bases this argument

26

on its assertion that it "made the inspections required of it by federal law, complied with the extensive FRA regulations regarding track maintenance and inspection, and exceeded what was required of it by conducting internal defect testing of the rail in the area." (Norfolk S. Ry. Co.'s Mem. of Law in Supp. of its Mot. for Summ. J. on Track Inspection & Maintenance Claims [Docket 271], at 19). Because there are genuine issues of fact as to whether NSRC complied with FRA regulations, the issue becomes whether there are also genuine issues of fact as to whether the plaintiff has alleged conduct that would meet the requirements for an award of punitive damages.

It is a general rule that "punitive damages are not recoverable for simple negligence." *Surber v. Greyhound Lines, Inc.*, No. 2:06-CV-00273, 2006 WL 3761372, at *4 (S.D. W. Va. Dec. 21, 2006) (citing 1 Stein on Personal Injury Damages (3d ed.) § 4:11). "A court errs in denying a defendant's motion for summary judgment dismissing a claim for punitive damages if the allegations of the complaint do not set forth the type of exceptional conduct transgressing mere negligence needed to support an award of punitive damages." *Id.* Under West Virginia law, punitive damages may be awarded if the wrongful act was "done maliciously, wantonly, mischievously, or with criminal indifference to civil obligations." *Peters v. Rivers Edge Mining, Inc.*, 224 W. Va. 160, 190 (2009) (quoting Syl. pt. 3, *Jopling v. Bluefield Water Works & Improvement Co.*, 70 W. Va. 670 (1912)).

In this case, the plaintiff's basis for punitive damages is, essentially, that NSRC has violated federal safety regulations, and has allegedly done so for years. The only real evidence here is that NSRC may have failed to comply with federal regulations, which resulted in injuries to the plaintiff. I **FIND** that there is insufficient evidence to support a claim for punitive damages in this case. Additionally, because I granted NSRC's motion for summary judgment on the

claims relative to improper train handling, I **GRANT** NSRC's motion for summary judgment on the issue of punitive damages in its entirety.

## VI.     Motions for Spoliation of Evidence and Bifurcation

### A.     The Plaintiff's Motion for Spoliation of Evidence is Moot Because the Claims that the Evidence is Allegedly Relevant to have been Summarily Adjudicated

The plaintiff filed a motion regarding NSRC's alleged spoliation of relevant evidence [Docket 340]. The plaintiff essentially argues that NSRC has destroyed "highly relevant" RailView data pertaining to the plaintiff's claims of excessive powered axles. The plaintiff originally also argued that NSRC destroyed certain RailView sequences that captured verbalizations, which makes it "now impossible to determine the contents of the deleted portion of that segment or any verbalizations." (Mem. of Law in Supp. of Pl. Charles Eugene Harris's Mot. Regarding Def. Norfolk S. Ry. Corp.'s Spoliation of Relevant Evidence [Docket 341], at 16).[10]

The RailView data that NSRC allegedly destroyed pertains to the plaintiff's claim that the defendant operated its train with excessive powered axles, a claim related to improper train handling. Because I granted summary judgment for NSRC on these claims on the issue of proximate cause, *see supra* Part V.D, evidence pertaining to whether NSRC operated its train with excessive powered axles is no longer relevant to the case.[11] Accordingly, I **DENY as moot** the motion regarding spoliation of relevant evidence in its entirety.

---

[10]     The request for relief originally involved data regarding two RailView units: one on engine 7573 and one on engine 9758. The data on engine 7573 may be relevant to the plaintiff's claims of excessive powered axles, while the relevancy of the data on engine 9758 was unknown, but pertained generally to potential recordings such as radio transmissions during the aftermath of the derailment. The plaintiff has since withdrawn his request regarding the data on engine 9758, and the only remaining issue is the data on engine 7573.

[11]     The court notes that the allegedly destroyed evidence does not pertain to proximate cause—the reason the court granted summary judgment for NSRC—but rather only to the claim that NSRC was operating its train with excessive powered axles.

**B.** **The Defendant's Motion for Bifurcation is Moot Because the Claims for Punitive Damages have been Summarily Adjudicated**

NSRC moves for bifurcation of the trial to separate the issues of liability for compensatory damages, amount of compensatory damages, and liability for punitive damages from the issue of amount of punitive damages. As discussed above, I granted NSRC's motion for summary judgment on the issue of punitive damages. Accordingly, NSRC's motion for bifurcation is **DENIED as moot**.

**VII.** **Conclusion**

With respect to the motions for summary judgment, I **FIND** that: (1) the plaintiff's state law claims alleging violations of FRA regulations are not preempted by federal law; (2) the plaintiff's state law claims alleging violations of NSRC's internal standards are preempted by federal law; (3) there is no genuine issue of material fact that NSRC failed to conduct visual inspections as required under 49 C.F.R. § 213.233; (4) there is no genuine issue of material fact that NSRC knew or had notice of the rail defect; (5) the plaintiff has provided insufficient evidence to support his claim that NSRC violated 49 C.F.R. §§ 213.33 and 213.103; (6) the plaintiff has provided insufficient evidence that his injuries are proximately caused by any improper train handling; and (7) the plaintiff has provided insufficient evidence to support his claim for punitive damages. Accordingly, the plaintiff's motion for partial summary judgment [Docket 250] is **GRANTED in part** and **DENIED in part**, the defendant's motion for summary judgment on track inspection and maintenance claims [Docket 269] is **GRANTED in part** and **DENIED in part**, and the defendant's motion for summary judgment on improper train handling claims [Docket 272] is **GRANTED**. In addition, as a result of the rulings above, the plaintiff's motion regarding spoliation of relevant evidence [Docket 340] and the defendant's motion to bifurcate the trial [Docket 356] are both **DENIED as moot**.

Accordingly, the court **FINDS** that defendant NSRC is liable to plaintiff Harris for a breach of its duty to inspect and maintain a railroad track, which proximately caused the derailment, injuring the plaintiff. The only remaining issues for trial are the compensatory damages to be awarded to the plaintiff.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          December 13, 2012

Joseph R. Goodwin, Chief Judge