IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES EUGENE HARRIS,

        Plaintiff,

v.                                    CIVIL ACTION NO. 2:11-cv-00497

NORFOLK SOUTHERN RAILWAY CORP.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are three motions for summary judgment: (1) Defendant/Third Party Plaintiff Norfolk Southern Railway Company's Motion for Summary Judgment as to its Claims for Express Indemnification and Defense from Cobra Natural Resources, LLC [Docket 264]; (2) Defendant/Third Party Plaintiff Norfolk Southern Railway Company's Motion for Summary Judgment Under the 1989 Siding Agreement and 2008 Lease [Docket 319]; and (3) Third-Party Defendant Cobra Natural Resources, LLC's Motion for Summary Judgment [Docket 268]. Responses and replies to each of these motions have been filed, and a hearing was held on November 19, 2012. These motions are all ripe for review. For the reasons discussed below, NSRC's motions for summary judgment [Dockets 264 & 319] are **DENIED**, and Cobra's motion for summary judgment [Docket 268] is **GRANTED in part** and **DENIED in part**.

**I.    Background**

Norfolk Southern Railway Company owns and operates the Ben Creek Spur, a rail line in Mingo County, West Virginia. In 1989, NSRC and Mingo Logan Coal Company ("Mingo Logan") entered into a Siding Agreement, which provided that three side tracks were to be

1

constructed adjacent to the Ben Creek Spur. According to Cobra, also in 1989, NSRC and Mingo Logan entered into a lease for the property upon which Mingo Logan would construct a coal loadout. In any event, NSRC and Mingo Logan entered into a lease agreement regarding this property in 2005. In 2007, Alpha Natural Resources purchased Mingo Logan's assets at Ben Creek, including the deep mines, preparation plant, and the loadout. Cobra, as Alpha's subsidiary, assumed ownership and management of the operations. As part of this asset purchase, an agreement was entered between the parties which assigned both the Siding Agreement and the 2005 Lease to Cobra. In 2008, the 2005 Lease was renewed between the parties.

Both leases include indemnification provisions whereby Mingo Logan and subsequently Cobra agreed to indemnify NSRC for certain claims, under certain conditions. The July 21, 2009 derailment resulted in claims by plaintiff Harris against NSRC, for which NSRC now seeks indemnity from Cobra. The derailment is discussed in detail in the court's separate Memorandum Opinion and Order, which is **ADOPTED** and incorporated herein.

## II. Procedural History

The procedural history of this case has been discussed in the court's separate Memorandum Opinion and Order o plaintiff Harris and defendant NSRC's cross motions for summary judgment. Accordingly, I **ADOPT** and incorporate the procedural history as set forth in that opinion. In addition, as a result of the July 21, 2009 derailment, Cobra filed a separate lawsuit for property damage and lost revenue against NSRC and one of NSRC's contractors, Sperry, alleging negligence for causing the derailment and the collapse of the loadout. In the instant case, NSRC filed third-party complaints against Cobra for express indemnity and Sperry for contribution and implied indemnity. Cobra later asserted a contribution claim against Sperry in this case. In May 2012, Cobra, NSRC, and Sperry reached a partial settlement which applied,

in whole or in part, to both lawsuits. Sperry was released entirely from the instant case and Cobra's separate lawsuit against NSRC and Sperry ended.

### III. Motions for Summary Judgment

The three summary judgment motions discussed herein all relate to the issue of whether NSRC is entitled to indemnification from Cobra for plaintiff Harris's claims against NSRC. Three indemnity provisions are at issue: (1) Paragraph 19 of the 2008 Lease; (2) Paragraph 9 of the 2008 Lease, and; (3) Paragraph 12(b) of the 1989 Siding Agreement.

Two preliminary issues before the court are (1) whether a contract for indemnity is void and unenforceable in this case because NSRC is a common carrier and (2) whether NSRC can seek indemnification under both the 2008 Lease and the 1989 Siding Agreement. The substantive issues before the court are (1) whether NSRC is entitled to indemnification under paragraph 19 of the 2008 Lease and (2) whether NSRC is entitled to indemnification under paragraph 9 of the 2008 Lease or paragraph 12(b) of the 1989 Siding Agreement. With respect to (2), there are sub-issues of (a) whether Cobra should be estopped, under the doctrine of quasi-estoppel, from asserting that NSRC was solely negligent for the accident; and (b) whether paragraph 12(b) of the 1989 Siding Agreement applies to the instant case.

#### A. Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

      **B.**    **The Indemnification Provisions Between NSRC and Cobra are not Void and Unenforceable in this Case**

The parties do not dispute that NSRC is a common carrier. Cobra essentially argues that, if the accident arises out of a duty owed by the railroad as a common carrier, indemnity is against public policy. (*See* Resp. in Opp'n to Def./Third-Party Pl. Norfolk S. Ry. Co.'s Mot. for Summ. J. as to its Claims for Express Indemnification & Def. from Cobra Natural Res., LLC [Docket 328], at 15). Cobra then asserts that NSRC had a fundamental duty, as a common carrier, to properly inspect and maintain its tracks. NSRC, perhaps anticipating Cobra's public policy argument, asserts in its motion that "West Virginia courts have long recognized that parties, especially sophisticated commercial entities, can reach an agreement to indemnify each other,"

4

and that "it is not against public policy in West Virginia to enforce this type of agreement." (Mem. of Law in Supp. of Def./Third-Party Pl. Norfolk S. Ry. Co.'s Mot. for Summ. J. as to its Claims for Express Indemnification & Defense from Cobra Natural Res., LLC [Docket 265], at 15).

The law in West Virginia is clear that indemnity provisions between a railroad and another commercial entity do not contravene public policy and are valid, if they do not relate to a duty or obligation of the railroad as a public carrier. *See Borderland Coal Co. v. Norfolk & W. Ry.*, 87 W. Va. 339 (1920); *Keystone Mfg. Co. v. Hines*, 102 S.E. 106, 108 (W. Va. 1920); *see also BP Am., Inc. v. Norfolk & W. Ry. Co.*, 155 F.3d 557 (4th Cir. 1998) (unpublished table decision); *Dawson v. Norfolk & W. Ry. Co.*, 197 W. Va. 10 (1996); *Sommerville v. Pa. R.R. Co.*, 151 W. Va. 709 (1967). Courts in the Southern District of West Virginia have considered agreements similar to the one in this case, and none have concluded that these agreements violate public policy. *See, e.g.*, *Justice v. Norfolk & W. Ry. Co.*, 657 F. Supp. 340, 341-42 (S.D. W. Va. 1987); *Cavender v. Consol. Rail Corp.*, 588 F. Supp. 98, 102 (S.D. W. Va. 1984).

Cobra relies on *Sommerville* for its proposition that NSRC had a fundamental duty, as a common carrier, to properly inspect and maintain its track. In *Sommerville*, the Supreme Court of Appeals of West Virginia found that the railroad had a duty to maintain and inspect its tracks and switches, and that the railroad breached this duty. *Id.* at 715-18. The railroad argued, however, that "it was relieved of such duty by reason of its sidetrack agreement" with a contractor that the railroad hired to inspect and maintain its tracks. *Id.* at 715-16. The court found that the railroad "cannot relieve itself of its primary obligations and duties by contracting with another to perform them." *Id.* at 717.

Therefore, *Sommerville* dealt with a different situation than the case at hand. There, the railroad argued that it was not liable to the plaintiff because the railroad had contracted with a third party to inspect and maintain the tracks, and that third party failed to do so. Therefore, according to the railroad, the third party, and not the railroad, was liable to the plaintiff. The *Sommerville* court rejected this argument. Here, however, NSRC does not argue that it is relieved of its liability to the plaintiff, nor does it argue that Cobra is the party liable to the plaintiff. Rather, NSRC argues that it is entitled to indemnification from Cobra for any damages that is payable to the plaintiff that results from the alleged liability of NSRC. Accordingly, I **FIND** that the indemnity provisions in the 2008 Lease and 1989 Siding Agreement do not contravene public policy and are enforceable under West Virginia law, and Cobra's motion for summary judgment on this issue is **DENIED**.

### C. NSRC May Seek Indemnity Under Both the 2008 Lease and the 1989 Siding Agreement

In its reply, Cobra argues that NSRC cannot seek indemnity under both the 2008 Lease and the 1989 Siding Agreement. Cobra asserts that because the plaintiff's claim arose out of a derailment caused by a defective track that NSRC allegedly failed to inspect and maintain, the 1989 Siding Agreement would be the contract applied to the instant case, if it applied at all, because it contains the more specific indemnity agreement. Cobra cites *Union Pac. R.R. Co. v. Bridal Veil Lumber Co.*, 219 F.2d 825 (9th Cir. 1955) in support for this argument.

In *Bridal Veil Lumber Co.*, the plaintiff was injured by a lumber company employee while operating rail cars on tracks owned by the railroad company. The plaintiff sued the railroad company, and the case was settled between those parties. Subsequently, the railroad company sued the lumber company, which operated a lumber mill on land leased from the railroad company, for indemnity. The railroad company based its indemnity claims on two documents:

the lease and a track contract. The district court held that there was no liability on the lumber company's fault under either agreement. One question on appeal is which document should control. The Ninth Circuit found that:

> [T]he most important factor or rule that should dominate construction here is that the indemnity provisions of the lease are in their nature general for the whole plant site – while the track contract specifically deals with the operation of the track and goings-on about it. Therefore, this court lays the lease to one side and holds that whatever rights [the railroad company] has over against [the lumber company] are under the track contract, the specific prevailing over the general.

*Bridal Veil Lumber Co.*, 219 F.2d at 829. I disagree. There is little authority supporting Cobra's arguments on this particular issue. Cobra provides a single, non-binding case from nearly sixty years ago, to which no case appears to have cited for this proposition since. Certainly, in canons of statutory construction, a specific statute prevails over a general one. *See, e.g.*, *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976). There is also some support that, in the specific context of arbitration provisions, where a single contract contains two dispute resolution provisions, one specific and one general, the specific provision will govern. *See, e.g.*, *Katz v. Feinberg*, 290 F.3d 95, 97-98 (2d Cir. 2002). However, with respect to the instant issue, Cobra has agreed to indemnify NSRC under two separate contracts: one related to the tracks, and one related to its lease of NSRC property for the operation of its loadout. Should indemnification be appropriate under these agreements, I see no reason to allow Cobra to potentially escape its own, voluntary contractual agreement to indemnify NSRC simply because one contract may be more specifically applicable to the accident that occurred than another. To any extent that Cobra moves for summary judgment on this issue, it is **DENIED**.

### D. NSRC is not Entitled to Indemnity from Cobra Under Paragraph 19 of the 2008 Lease

Paragraph 19 of the 2008 Lease states:

7

> **19. Track Clearance.** Notwithstanding anything contained in this Lease, and irrespective of the sole, joint, or concurring negligence of the Landlord, Tenant shall assume sole responsibility for and shall indemnify, save harmless and defend the Landlord Entities from and against all claims, actions or legal proceedings arising, in whole or in part, from the conduct of Tenant's operations, or the placement of Tenant's fixtures, equipment or other property, within twenty-five feet (25') of Landlord's tracks, if any, located on or adjacent to the Premises.

(2008 Lease Agreement [Docket 264-1], at ¶ 19). With respect to paragraph 19, the parties dispute two primary issues: (1) whether the claims at issue arose, in whole or in part, "from the conduct of Tenant's operations" and (2) whether the claims at issue arose, in whole in or part, from "the placement of Tenant's fixtures, equipment or other property," within twenty-five feet of NSRC's tracks, located on or adjacent to the Premises. (*Id.*).

I **FIND** that the plaintiff's claims do not arise, in whole in part, from either the conduct of Tenant's operations *or* from the placement of Tenant's fixtures, equipment, or other property. Both parts of paragraph 19 relied upon by NSRC require that the claims *arise from* Cobra's acts—either the conduct of its operations, or the placement of its fixtures, equipment, or other property. The term "arising from" means, essentially, "resulting from." *See* BLACK'S LAW DICTIONARY 102 (7th ed. 1999) (defining "arise"); *see also Nutter v. St. Paul Fire & Marine Ins. Co.*, 780 F. Supp. 2d 480, 483 (N.D. W. Va. 2011) (in insurance context, "[c]ase law has found the terms 'arising from' and 'resulting from' to be synonymous."). The plaintiff's claims resulted from the derailment of NSRC's rail cars, which in turn resulted from NSRC's alleged failure to maintain and inspect its tracks. Stated differently, the plaintiff's state law negligence claims arise from the alleged failure of NSRC to comply with federal regulations setting forth standards of track inspection and maintenance, not from the conduct of Cobra's operations or any placement of anything within 25 feet of the tracks. Accordingly, NSRC's motion for summary judgment on this issue is **DENIED**, and Cobra's motion for summary judgment on this issue is **GRANTED**.

### E. NSRC may be Entitled to Indemnity Under Paragraphs 9 of the 2008 Lease and 12(b) of the 1989 Siding Agreement

Both paragraph 9 of the 2008 Lease and paragraph 12(b) of the 1989 Siding Agreement require that NSRC not be solely negligent in order to seek indemnity. Paragraph 9 of the 2008 Lease states:

> **9. Indemnity.** *Except for damage caused solely by Landlord's negligence*, Tenant agrees to indemnify, defend, and save harmless Landlord, Landlord's parent companies, subsidiaries, affiliates, lessors, licensors, and subsidiaries of parent companies (collectively the "Landlord Related Entities") and Landlord's and Landlord's Related Entities' officers, directors, members, shareholders, lenders, agents and employees (collectively the "Landlord Entities") against all claims (including but not limited to claims for bodily injury, death or property damage), economic losses, liabilities, costs, injuries, damages, actions, mechanic's liens, losses and expenses (including but not limited to reasonable attorney's fees and costs), to whomsoever, including, but not limited to, Tenant's agents, workmen, servants or employees, or whatsoever occurring (collectively, "Claims") arising out of or relating to Tenant's use or occupancy of the premises.

(2008 Lease Agreement [Docket 264-1], at ¶ 9) (emphasis added). Paragraph 12(b) of the 1989 Siding Agreement states:

> [12](b) Industry covenants and agrees to indemnify, protect and save harmless the Railway, its officers, agents and employees, from and against any and all loss of or damage to any property whatsoever (including property of the parties hereto and of all other persons whomever), and any and all loss or damage on account of injury to and the death of any person whomsoever (including employees and patrons of the parties hereto and all other persons whomsoever), and from and against any and all suits, claims, liabilities and demands, for such loss or damage, and any costs or expenses in connection therewith, caused by or growing out of the operation of this agreement or the presence of cars, or their contents on the track *except where loss or damage other than by fire caused by locomotives as aforesaid, is due to the sole negligence of the Railway.*

(1989 Siding Agreement [Docket 264-2], at ¶ 12(b)) (emphasis added). Although substantively, the primary issue with regard to both paragraphs is whether NSRC can be deemed to be "solely negligent," each party sets forth preliminary arguments. NSRC argues Cobra is estopped from arguing that NSRC is "solely negligent" because Cobra previously argued that NSRC *and* Sperry

9

were both negligent. Cobra argues that Paragraph 12(b) of the 1989 Siding Agreement is inapplicable to the instant case.

### i. Quasi-Estoppel

NSRC asserts, pursuant to the doctrine of quasi-estoppel, that because Cobra filed a separate complaint alleging that both NSRC and Sperry were negligent in causing the derailment, and Cobra settled with both parties for a monetary benefit, Cobra cannot now argue that NSRC was solely negligent in causing the plaintiff's injuries. Treatises discussing the doctrine of quasi-estoppel note that the doctrine focuses on preventing unconscionability. As described in Corpus Juris Secundum:

> The [quasi-estoppel] doctrine applies when it would be unconscionable to allow a person to maintain a position that is inconsistent with one to which he or she acquiesced, or from which he or she accepted a benefit. . . . quasi-estoppel is directly grounded upon a party's acquiescence or acceptance of a payment or benefits, by virtue of which that party is thereafter prevented from maintaining a position that is inconsistent with those acts.

31 C.J.S. *Estoppel and Waiver* § 146. And as described in American Jurisprudence:

> "Quasi estoppel" applies when it would be unconscionable to allow a party to assert a right that is inconsistent with a prior position. . . . [Q]uasi-estoppel seeks to protect the integrity of litigation. [U]nlike equitable estoppel, quasi estoppel does not require as a necessary ingredient the concealment or misrepresentation of existing facts or actual reliance by the other.

28 AM. JUR. 2D *Estoppel and Waiver* § 32; *see also In re Shiflett*, 200 W. Va. 813, 820 n.26 (1997); *In re Robb*, 23 F.3d 895, 898 (4th Cir. 1994) ("quasi-estoppel forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects.") (quoting *In re Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991)). It is unclear whether West Virginia has ever expressly adopted the doctrine of quasi-estoppel. *See, e.g.*, *In re Shiflett*, 200 W. Va. at 820 n.26 ("[W]e can find no cases in West Virginia specifically applying the doctrine of quasi estoppel").

I **FIND** that there is no unconscionability in this case, and the doctrine of quasi-estoppel is not necessary to protect the integrity of this litigation. The cases cited by NSRC illustrate situations in which quasi-estoppel would be appropriate, but are factually distinguishable from the instant case in significant ways. *Robb* and *Davidson* involved situations where debtors in bankruptcy proceedings had classified certain monthly payments as alimony on their tax returns, thereby allowing these payments to be deducted from their taxes. Once they declared bankruptcy, however, each debtor attempted to take the position that these monthly payments were *not* alimony in order to discharge these debts in bankruptcy.

In the instant case, Cobra had asserted that NSRC and Sperry were both negligent. That case settled between the parties. Stretched to its limits, the court can see how *Robb* and *Davidson* might plausibly apply to the instant case. In those cases, the debtors assert that certain payments were alimony, and later assert that the payments were not alimony. In this case, Cobra asserted that NSRC and Sperry were both negligent, and now asserts that NSRC was solely negligent. However, I cannot find any unconscionability, and therefore I do not find the doctrine of quasi-estoppel necessary to protect the integrity of this litigation. Sperry's settlement with Cobra did not mean that Sperry was in fact negligent. Cobra received some settlement proceeds from Sperry; however, parties settle disputed claims for any number of reasons. I also believe that it is significant that West Virginia has not specifically adopted the doctrine of quasi-estoppel. Accordingly, NSRC's motion for summary judgment on the issue of quasi-estoppel is **DENIED**.

### ii. Applicability of Paragraph 12(b) of the 1989 Siding Agreement

Cobra argues that paragraph 12(b) of the 1989 Siding Agreement is inapplicable to the facts in the case. Again, this paragraph states:

> [12](b) Industry covenants and agrees to indemnify, protect and save harmless the Railway, its officers, agents and employees, from and against any and all loss of

> or damage to any property whatsoever (including property of the parties hereto and of all other persons whomever), and any and all loss or damage on account of injury to and the death of any person whomsoever (including employees and patrons of the parties hereto and all other persons whomsoever), and from and against any and all suits, claims, liabilities and demands, for such loss or damage, and any costs or expenses in connection therewith, caused by or *growing out of the operation of this agreement or the presence of cars, or their contents, on the track* except where loss or damage other than by fire caused by locomotives as aforesaid, is due to the sole negligence of the Railway.

(1989 Siding Agreement [Docket 264-2], at ¶ 12(b)) (emphasis added). Cobra then quotes paragraph 23 of the 1989 Siding Agreement, which states:

> Notwithstanding any other provision of this agreement, the Industry hereby assumes all liability for and will save and keep harmless the Railway, its officers, agents, and employees from and indemnify them against any and all loss or damages resulting from injury to or death of any person or persons whomever, or loss of or damage to any property whatsoever, in any manner arising out of *the movement or attempted movement of any car or cars upon the track* by the Industry or by anyone whomsoever other than employees of the Railway.

(*Id.* at ¶ 23(b)) (emphasis added). Cobra's argues that the Siding Agreement contemplates a difference between claims arising out of "the presence of cars, or their contents, on the track" and claims arising out of "the movement or attempted movement of any car or cars upon the track." According to Cobra,

> The only reasonable construction, and the only construction which gives meaning to all of the terms, is that paragraph 12(b) has no application to claims arising out of the movement of cars by NSRC. Instead, paragraph 12(b) refers to the 'presence' of cars or their contents on the three storage sidings.

(Mem. of Law in Supp. of Third-Party Def. Cobra Natural Res., LLC's Mot. for Summ. J. [Docket 270], at 19). Cobra asserts that paragraph 23 controls the plaintiff's claim, and because the movement of the cars was the act of NSRC employees, Cobra has no obligation to indemnify NSRC. In response, NSRC asserts that Cobra agreed, under the Siding Agreement, to indemnify NSRC for claims "caused by or growing out of the operation of this agreement." (Def./Third-Party Pl. Norfolk S. Ry. Co.'s Resp. to Third-Party Def. Cobra Natural Res., LLC's Mot. for

Summ. J. [Docket 327], at 20). Moreover, NSRC interprets paragraph 23 and 12(b) in the following manner:

> Pursuant to paragraph 23, NSRC is entitled to indemnity for all accidents that occur when any entity other than NSRC is moving cars on the track, regardless of whether or not NSRC's sole negligence is the only cause of the accident. Conversely, under paragraph 12(b), NSRC may not be indemnified if an accident is solely due to or caused by the negligence of NSRC. The more expansive indemnity obligation under paragraph 23 is required because NSRC would ordinarily not permit any entity to move cars on NSRC's tracks. In exchange for the privilege of being entitled to do so, Cobra was required to indemnify NSRC for all accidents, even in the case of NSRC's sole negligence.

(*Id.* at 19). NSRC also takes issue with Cobra's reading of the word "track" as referring only to the three storage sidings. In support, NSRC refers to paragraph 18, which explicitly defines the word track: "Where the word 'track,' 'siding' or 'side track' is used herein, it shall mean and apply to all of the tracks or sidings to be constructed, operated or maintained hereunder." (1989 Siding Agreement [Docket 264-2], at ¶ 18). NSRC asserts that it is undisputed that the accident occurred within the bounds of "Track B" as included within the Siding Agreement.

I **FIND** that paragraph 12(b) is applicable to the instant case. There is no conflict between paragraphs 12(b) and 23, as they simply address two different issues. Paragraph 23 provides for indemnity in cases where a claim arises out of the movement or attempted movement of any car or cars upon the track by Cobra or by anyone other than employees of NSRC, regardless of whether NSRC was solely negligent. Paragraph 12(b) provides for indemnity in cases where a claim arises out of the presence of cars, or their contents, on the track, except when NSRC is solely negligent. In the instant case, the accident occurred as a result of the movement of cars by NSRC's employees. Therefore, it is clearly outside of the scope of paragraph 23, but within the scope of paragraph 12(b). The "presence of cars, or their contents, on the track" encompasses movement of the cars on the track—naturally, for cars to be moving on the track, they must be

present on the track. Moreover, I agree that the word "track" encompasses the track on which the accident in this case occurred. Accordingly, Cobra's motion for summary judgment on this issue is **DENIED**.

### iii. Sole Negligence of NSRC

NSRC does not argue in its first motion for summary judgment that it is not solely negligent. As noted below, NSRC's other motion for summary judgment is denied as untimely. Accordingly, NSRC's motion for summary judgment on the issue of whether it was "solely negligent" for purposes of the 1989 Siding Agreement and 2008 Lease is **DENIED**.

### F. NSRC's Motion for Summary Judgment Under the 1989 Siding Agreement and 2008 Lease is Untimely[1]

NSRC's motion for summary judgment under the 1989 Siding Agreement and 2008 Lease was filed on October 24, 2012. (*See* Def./Third-Party Pl. Norfolk S. Ry. Co.'s Mot. for Summ. J. Under the 1989 Siding Agreement & 2008 Lease [Docket 319]). The court set the deadline for the filing of dispositive motions at October 5, 2012. (*See* Order of Court [Docket 162]). Although deadlines for filing responses and replies in connection with motions for summary judgment were extended to October 26, 2012 and November 2, 2012, respectively, the deadline for filing dispositive motions was never extended. (*See* Order [Docket 292]).

NSRC's excuse for filing this motion for summary judgment late is because "Cobra's experts had not been deposed as of the time of the initial Summary Judgment deadline." (Def./Third-Party Pl. Norfolk S. Ry. Co's Mot. for Summ. J. Under the 1989 Siding Agreement & 2008 Lease [Docket 319], at 1 n.1). However, NSRC knew on September 28, 2012 that it

---

[1] The court also notes that NSRC has filed, in total, *four* summary judgment motions in this case—two pertaining to the plaintiff's state law negligence claims, and two pertaining to indemnification from Cobra. It appears that instead of filing a motion to extend the page limitation on a single motion for summary judgment, NSRC opted to file multiple motions instead, allowing itself forty pages to argue summary judgment rather than the twenty allowed by Local Rule of Civil Procedure 7.1(2).

14

would not be in a position to file motions that depended on Cobra's expert witnesses until at least October 24, 2012. Thus, NSRC would have known by that time that it would not be in a position to file the motion for summary judgment, which also depended on Cobra's expert witnesses, by the initial deadline, and NSRC did not file a motion to extend this deadline. Accordingly, NSRC's motion for summary judgment under the 1989 Siding Agreement and 2008 Lease [Docket 319] is **DENIED** as untimely.

### IV. Conclusion

With respect to the motions for summary judgment, I **FIND** that: (1) the contractual indemnity in the 2008 Lease and 1989 Siding Agreement are not contrary to public policy and are enforceable under West Virginia law; (2) NSRC may seek indemnity under both agreements; (3) NSRC is not entitled to indemnity from Cobra under paragraph 19 of the 2008 Lease; (4) Cobra is not estopped from asserting that NSRC was solely negligent for the plaintiff's injuries; (5) Paragraph 12(b) of the 1989 Siding Agreement is applicable to the instant case; and (6) NSRC's second motion for summary judgment relating to the 1989 Siding Agreement and paragraph 9 of the 2008 Lease is untimely. Accordingly, NSRC's motion for summary judgment as to its claims for express indemnification and defense from Cobra [Docket 264] is **DENIED**, NSRC's motion for summary judgment relating to the 1989 Siding Agreement and 2008 Lease [Docket 319] is **DENIED**, and Cobra's motion for summary judgment [Docket 268] is **GRANTED in part** and **DENIED in part**.

Finally, for purposes of trial and pursuant to Federal Rule of Civil Procedure 42(b), the court **BIFURCATES** NSRC's indemnification claim against Cobra from Harris's negligence claim against NSRC. The first phase of the trial will be limited to the plaintiff's negligence claim

and the second phase of the trial will address NSRC's indemnification claim. The jury will only be advised of the indemnification issue when and if necessary.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 13, 2012

Joseph R. Goodwin, Chief Judge