IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES EUGENE HARRIS

        Plaintiff,

v.                                CIVIL ACTION NO. 2:11-cv-00497

NORFOLK SOUTHERN RAILWAY COMPANY,

        Defendant/Third Party Plaintiff.

v.

COBRA NATURAL RESOURCES, LLC,

        Third Party Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the parties' Joint Motion for Continuance of Phase Two Trial [Docket 447]. Counsel for both parties have conflicts with the scheduled trial date of April 2, 2013. Accordingly, the joint motion is **GRANTED** and the trial is continued. The court will hold a status conference in this matter on **April 16, 2013**, at **1:30 p.m.** in Charleston, West Virginia. Lead counsel and any unrepresented parties shall appear fully prepared to discuss all aspects of the case, including the scheduling of a trial date. Individuals with full authority to settle the case shall be present in person.

Additionally, the parties request that the court resolve several legal issues. Finally, also pending the court are ten motions *in limine* [Dockets 201, 218, 232, 234, 317, 318, 321, 410, 411]. As discussed below, these motions are **DENIED**.

1

**I.      The Applicability of the Federal Railway Safety Act**

According to the parties, "Cobra has argued that for purposes of its contract with NSRC, the FRA's Track Safety Standards have no application. NSRC disagrees with this position." (Joint Mot. for Continuance of Phase Two Trial [Docket 447], at 2) (internal citations omitted). The documents referenced [Dockets 285 & 300] were filed prior to the court's rulings on summary judgment [Dockets 379 & 380]. Taken in context, Cobra seems to argue that regardless of whether the FRA Track Safety Standards preempted state negligence standards for purposes of Harris's underlying negligence action, the Standards have no bearing on whether Norfolk Southern was "negligent" for purposes of the contracts between Norfolk Southern and Cobra. This argument appears moot. I have already ruled that Norfolk Southern was negligent and that its negligence was a proximate cause of Harris's injuries.

**II.     Whether Sperry Rail, Inc.'s Acts or Omissions can be Imputed to Norfolk Southern**

Cobra argues that Sperry was Norfolk Southern's own contractor, and therefore Norfolk Southern cannot argue that the injuries to Harris were not caused by its sole negligence by pointing to Sperry's negligence. In support, Cobra cites *Porche v. Gulf Miss. Marine Corp.*, 390 F. Supp. 624 (E.D. La. 1975). In *Porche*, Fluor Ocean Services contracted with Coastal Marine to provide transportation from the port to a barge. A laborer was killed while transferring from a Coastal Marine crewboat to the barge. In support of its argument that it was not solely negligent, Fluor argued that Coastal Marine was partly negligent. The court disagreed, finding that:

> Coastal was doing Fluor's work. Fluor had assumed the duty of transporting Allen's employees to the Fluor barge. The parties could scarce have intended that Fluor be permitted to contract out the duties it owed Allen, and then, when the negligent performance of these duties cause injury either alone or in conjunction with Fluor's negligence, contend that the injury did not result from the sole negligence of Fluor.

*Id.* at 630. *Porche* is inapposite. Important in *Porche* was the fact that it was Fluor's

responsibility to provide transportation from the port to a barge. *See Id.* In this case, it was clearly Norfolk Southern's responsibility to visually inspect and maintain the tracks; however, Norfolk Southern had no additional regulatory responsibility to conduct internal rail testing. Of course, the question of whether Sperry's alleged failure to conduct internal rail testing was a proximate cause of the injuries to Harris must still be answered—but it is a factual question for the jury.

### III. Motions *in Limine*

Ten motions *in limine* are ripe for review. As discussed below, these motions are all **DENIED**.

#### A. *Motions in Limine [Dockets 200, 201, 218, 232, 234, 317, 318]*

First, Cobra's motion *in limine* to exclude evidence of contractual duties contained in paragraph 14 of the 1989 Siding Agreement [Docket 200] is **DENIED**. Cobra's alleged breach of its contractual duties may involve conduct that is relevant to whether the injuries to Harris were caused solely by Norfolk Southern's negligence.

Second, Cobra's motion *in limine* to exclude evidence of any negligence on its part [Docket 201] is **DENIED**. Although the court has found that Norfolk Southern's failure to inspect and maintain the tracks was a proximate cause of the injuries to Harris, there can be more than one proximate cause under West Virginia law.

Third, Norfolk Southern's motion *in limine* to exclude evidence relating to Cobra certificates of mine safety training [Docket 218] is **DENIED**. The degree of control that Norfolk Southern exercises over its property—including its tracks—may be relevant to whether the injuries to Harris were caused solely by Norfolk Southern's negligence.

Fourth, Norfolk Southern's motion *in limine* to exclude evidence that Norfolk Southern

was obligated to inspect or maintain the track beyond the FRA's Track Safety Standards [Docket 232], Norfolk Southern's motion *in limine* to exclude the July 30, 2009 Tim Drake e-mail [Docket 234], and Norfolk Southern's motion *in limine* to exclude testimony of Cobra's expert R.H. Dunn [Docket 318] are **DENIED**. To the extent that Cobra seeks to introduce irrelevant evidence at trial, counsel may raise objections at that time.

Fifth, Norfolk Southern's motion *in limine* to exclude newly disclosed opinions from Cobra's expert, R. Dean Harris [Docket 317] is **DENIED**. I am guided by the five factors set forth in *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).[1] Applying these factors, I **FIND** that, even assuming Dean Harris failed to disclose his "new" opinion in accordance with Federal Rule of Civil Procedure 26, any such failure was substantially justified and harmless under Rule 37(c)(1).

### B. *Motion in Limine - Cobra's Motion to Partially Exclude Testimony of Brett A. Pond [Docket 321]*

Cobra also seeks to partially exclude the testimony of Norfolk Southern's expert Brett A. Pond [Docket 321]. Specifically, Cobra seeks to exclude Dr. Pond's testimony as to the cause of the corrosion of the rail because it is a "bald, speculative conclusion with no basis in science or fact." (Mot. to Partially Exclude Testimony of Brett A. Pond [Docket 322], at 2).

Federal Rule of Evidence 702 says that expert testimony is admissible if it will assist the jury and is (1) "based on sufficient facts or data," (2) "the product of reliable principles and

---

[1] The five factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d at 597 (4th Cir. 2003).

methods," and (3) "the principles and methods [have been applied] reliably to the facts of the case." Fed. R. Evid. 702. A two-part test governs admissibility of expert testimony. The evidence is admitted if "it rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). The proponent of expert testimony does not have the burden to "prove" anything. He must, however, "come forward with evidence from which the court can determine that the proffered testimony is properly admissible." *Md. Cas. Co. v. Therm-O-Disc., Inc.*, 137 F.3d 780, 784 (4th Cir. 1998).

The district court is the gatekeeper. It is an important role: "[E]xpert witnesses have the potential to be both powerful and quite misleading[;]" the court must "ensure that any and all scientific testimony . . . is not only relevant, *but reliable*." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (emphasis added) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) and *Daubert*, 509 U.S. at 588, 595). As stated in *Westberry*, "The inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594-95).

I "need not determine that the proffered expert testimony is irrefutable or certainly correct" – "[a]s with all other admissible evidence, expert testimony is subject to testing by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (quoting *Daubert*, 509 U.S. at 596 (alteration in original); *see also Md. Cas. Co.*, 137 F.3d at 783 (noting that "[a]ll *Daubert* demands is that the trial judge make a 'preliminary assessment' of whether the proffered testimony is both reliable . . . and helpful").

As a preliminary matter, the parties do not dispute that Dr. Pond is qualified as an expert

and that Dr. Pond's expert testimony would be relevant, if found reliable. The issue is therefore the reliability of Dr. Pond's expert testimony. Cobra takes issue with Dr. Pond's opinion that "corrosion of the rail was caused by sulfuric acid produced when the coal in vicinity of the rail was wetted." (Mot. to Partially Exclude Testimony of Brett A. Pond [Docket 322], at 1-2). Cobra argues that (1) this theory is untested and developed expressly for purposes of this litigation; (2) the only coal sample obtained by Dr. Pond contained low sulfur levels and was not acidic; (3) Dr. Pond ignored the sulfur content of the coal shipped from the loadout; and (4) Dr. Pond has not identified any methodology he relied upon concerning the acid-producing potential of the coal.

Norfolk Southern argues that "every expert . . . agrees with the cornerstone of Dr. Pond's theory, i.e., that sulfuric acid can be produced from coal." (Norfolk S. Ry. Co.'s Resp. to Cobra's Mot. to Partially Exclude Testimony of Brett A. Pond [Docket 331], at 7-8). In support, Norfolk Southern points to Dr. Bagnall and Dean Harris's conclusions that sulfuric acid can be produced from coal. Dr. Bagnall also offered his opinion that sulfuric acid likely corroded the rail. Dr. Pond's *theory* that sulfuric acid can be produced from coal is therefore sufficiently reliable.

Whether Dr. Pond's methodology in applying this theory is reliable is a separate issue. Norfolk Southern discusses the steps that Dr. Pond went through in his testing: he collected samples and sent parts of the corroded rail and soil samples to laboratories for testing and analysis. The laboratory results revealed that internal structural defects did not cause the fracture, but that elevated levels of sulfur was found on the rail—and was the only corrosive element found on it. The laboratory results also indicated that the coal sample, taken from coal in and around the rail, contained a sulfur component. Based on this, and Dr. Pond's further analyses studying reactions between rails when they are exposed to coal, Dr. Pond concluded that sulfuric

acid was the cause of the corrosion of the rail in this case.

I **FIND** that Dr. Pond's conclusions are based on sufficient facts or data, that they are based on reliable principles and methods, and that the principles and methods have been applied reliably to the facts of this case. Dr. Bagnall and Dean Harris have both objectively assessed Dr. Pond's theory and come to different conclusions; however, the correctness of his conclusions is a question for the jury to decide. Accordingly, this motion is **DENIED**.

### C. *Cobra's Additional Motions in Limine [Dockets 410 & 411]*

Finally, Cobra's motion *in limine* to exclude evidence regarding alleged negligence on the party of Sperry Rail, Inc. [Docket 410] and Cobra's motion *in limine* to exclude evidence regarding the corrosion mechanisms that contributed to the development of the rail defect [Docket 411] are **DENIED**. The evidence regarding Sperry's alleged negligence may be relevant to the issue of whether the injuries to Harris were caused solely by Norfolk Southern's negligence. Moreover, Cobra's reliance on W. Va. Code § 55-7-24 in arguing that Norfolk Southern may not assert the negligence of a non-party is misplaced; section 55-7-24 applies to tort actions involving joint and several liability, not actions for indemnity.[2] Cobra's remaining argument with respect to Sperry's alleged negligence is discussed *supra*, Part II. Finally, the evidence regarding the corrosion mechanisms that contributed to the development of the rail defect, such evidence may be relevant to whether the injuries to Harris were caused solely by Norfolk Southern's negligence.

### IV. Conclusion

As discussed above, the parties' Joint Motion for Continuance of Phase Two Trial [Docket 447] is **GRANTED**. The court will hold a status conference in this matter on **April 16,**

---

[2] In fact, subsection (d) states: "Nothing in this section may be construed to affect, impair or abrogate any right of indemnity or contribution arising out of any contract or agreement or any right of indemnity otherwise provided by law." W. Va. Code § 55-7-24(d)

7

**2013**, at **1:30 p.m.** in Charleston, West Virginia. Lead counsel and any unrepresented parties shall appear fully prepared to discuss all aspects of the case, including the scheduling of a trial date. Individuals with full authority to settle the case shall be present in person. Additionally, as discussed above, the parties' motions *in limine* [Dockets 201, 218, 232, 234, 317, 318, 321, 410, 411] are **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 18, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE